Case 14-1643. Rick Bonds v. Phillips Electronics N America Corp at all. Oral argument not to exceed 15 minutes per side. Mr. Meyer for the appellant. Thank you. Richard Meyer, appearing on behalf of the appellant. Your Honors. I would like to reserve two minutes for rebuttal. Your Honor, this is a case of review on a motion for summary judgment in the Eastern District of Michigan Court. In this particular case it was one count that was submitted. It was on interference with a business relationship and the judge ruled that there was only one issue that he had to make a decision on and that was really the causation issue. In this particular case there was a letter that was submitted in response to that motion by appellant of Michael Mercer and the letter was dated August 25, 2009 and in that letter it said that he was sorry that plaintiff's employment with Barrington didn't work out as agreed and I hope you understand that the threat of a lawsuit that Phillips may place on us is too costly if we keep you employed. I wish it worked out differently. The lower court judge ruled that that was hearsay and refused to consider that. He in his decision indicated it is well settled that courts must disregard hearsay and used to counter a motion for summary disposition citing the case of Alexander v. Michigan Department of Corrections, a Sixth Circuit case from the year 2009. Subsequent to the Alexander case we have an Eleventh Circuit case that came out, a Jones case, that talks about when statements of hearsay in a motion for summary disposition can be, in fact they cited an exception where they put a little test together and I think that I'm asking this court to review whether or not a test should have been placed in this particular case. In the Jones case the court said that if in fact the case is going to be hearsay and you can conclude it's hearsay and there's some kind of either testimony, either maybe a deposition, maybe an affidavit sworn, that that testimony will not differ at time of trial, then that case should become hearsay and therefore it would not be admitted. If in fact at the time of trial some of the testimony may indicate something different than what the court feels is hearsay, it may prove that it's not hearsay, then in that case the court should wait until the time of trial to make the ruling on whether or not that's hearsay. I don't think that differs remarkably from the Alexander decision from this circuit. I think that the test should be adopted in this circuit. I think in this particular case what we know is the following. We know that Mike Mercer's deposition was never taken. There's no sworn testimony that he said anything. We know that the only testimony that we have or statement from Mr. Mercer was an unsworn statement that was submitted to the lower court. The unsworn statement to the lower court basically stated that to his knowledge he had never had any threats made to his company. He didn't say that the statement that he made that we had submitted was false. He didn't say that he would not testify in accordance with that. We might, as far as we know, at the time of trial, if he was submitted that document and asked for authenticity of that document, he may say, yes, I wrote that document. We know, for example, that there's several exceptions here for the hearsay. We know, for example, that this was on Barrington letterhead. It wasn't a letter. It wasn't an email sent to the plaintiff. It wasn't just an underhand letter. It was on their letterhead. We know that the person who wrote it was the vice president of service operations at Barrington. He wrote that letter. He wrote that and sent that to the plaintiff at his address. This is the Michael Mercer letter, right? Right. Absolutely, Your Honor. It says, I'm sorry that your employment with Barrington didn't work out as agreed. I hope you understand that the threat of a lawsuit that Phillips may place on us is too costly. Right. If we were to keep you employed. Uh-huh. Is that enough to show that Phillips actually threatened a lawsuit? Isn't it written fairly vaguely? Well, Your Honor, there's another letter, too, and you take it in the two letters, put them together. There's a Gerald Whitcomb letter from their attorney where he sent the letter out to the plaintiff and copied Barrington indicating that he wanted certification that the plaintiff had not taken any kind of material content. It turned out he had taken some, and Barrington turned over a couple of disks with Phillips' intellectual property on the disk. Is that not correct? In fact, my understanding was that several months after this lawsuit was dismissed that happened, and they did do that. However, there was no indication that the plaintiff had taken that. There was no indication that it was connected with the plaintiff in any way, shape, or form. Okay, but the point is that Barrington, it looks like to me all Barrington is saying is that, you know, we now know that you were working for Phillips at the same time you were working with us, and we don't want to get into a situation where Phillips might sue us looking for what intellectual property he may have brought with you. That's all that letter says. Well, the problem is Barrington employed many, many people from Phillips. It's a small industry. They handle MRI machines. It's a small industry. People leave Phillips, go to Barrington. Apparently, from what I'm understanding, is somebody from Phillips previously brought those disks over in their training disk for one of the new MRI machines. They never, in fact, the plaintiff told, he said straight out, I won't do certain things. I won't work on any of the equipment from Phillips. Well, my question wasn't about that. My question was about the thrust of the letter that Barrington sent your client, and it doesn't say we've had a threat from Phillips. They're going to sue us. It says we simply can't sustain your employment when there is the possibility that they could sue us. Well, if they said that they can't sustain the employment when there was a possibility of suing them, there's a couple of things we've got to look at. Number one, there was no non-compete ever, ever presented. If you go back and look, they're talking about something 20 years prior to that from two companies prior to what the plaintiff worked for, for a company named Picker, which talked about intellectual property. There was no intellectual property. They had no evidence of that. They even cited that they had evidence. I think in that letter they talked about a situation with a hospital where they said that he called in the company and asked about a code, and the plaintiff wasn't even at that time working at that hospital. There was no evidence of that. That was a pure fabrication. The question is why did they put that in a letter from an attorney, put that in a letter to someone else, a subsequent employer, unless they were trying to threaten and trying to convince that employer that it's not worth keeping the plaintiff employed. That's exactly what that letter is doing. I think I cited in my brief how many inaccuracies there were in that letter. There are a number of inaccuracies, things that can't even be proven. I presented to the lower court a schedule of what the plaintiff did during that day, and he wasn't anywhere near the company that they said he was at, that they observed him at, and where supposedly he called in. So the problem that I have is this. We have all kinds of accusations flying. They may sit down and say, well, we want to preserve our property rights, our intellectual property. They may have wanted to do that, but the problem is there was no evidence that the plaintiff had even touched that. He had made clear to everyone that he did not want to touch anybody's equipment that Phillips worked on, and he drew a clear line of what he was going to do when he worked. So he came back, and they knew that, and based on the fact that they sent that letter out to not only him and his employer, both of them indicating that they could do or were going to do certain things with the intellectual property. I believe that that's the reason that they came up with the conclusion that he was, in writing this letter, he was too costly to keep threat of a lawsuit and couldn't sue if, in fact, they kept him around. But my question to this court is, shouldn't that have been admitted? Shouldn't that have been considered? Even if the court sat down and ran that test and said, look, we're going to adopt that test. We're going to see if, in fact, that could not be established at trial before the court concluded that hearsay shouldn't even be considered. And I believe that if that's considered and it goes to the jury, then what's going to end up happening is we're going to see that the jury's going to look at that, and we're going to hear other evidence that comes in. How did that letter surface? Just like you're saying, isn't it just a suggestive letter, or was it more? Was the deposition of Mercer taken? No, Your Honor. Never taken. So there's no sworn... You have taken this? We tried, as did the defendant. Mr. Mercer moved from, I believe he was in Wisconsin, he was in Florida. We tried to get him several times, and he was not available when we asked to take his deposition. So it created a problem for us trying to get that deposition. But even so, we don't have any sworn testimony that he would say by the way that he's claiming that there was no threat made, that it was innuendo or suggestive or vague or anything else. We don't have any of that. And is there any affidavit material from Mercer? Did he sign an affidavit? No, he did not write an affidavit. He wrote what they call a statement, and I can read from it. It's document 416 page ID 1350. It says, to the best of my knowledge at this time, no one at this time from Phillips threatened a lawsuit against Barrington. So he's claiming to the best of his knowledge. He's not saying, no, it never happened. He's not saying that the letter's false. He's not saying that when he wrote that he didn't write the letter, he's not denying any of that. Well, let's assume there was a threat. But somebody at Phillips called somebody at Barrington and said, okay, you've hired this man, Bonds, and you've hired him without due diligence, and it turns out he's working for us, and we think there's a possibility that he's taken some of our proprietal information with him, and we're thinking about suing you. Would that alone constitute tortious interference? No. What it would constitute tortious interference, if they said to him, you get rid of Mr. Bonds or we will sue you for this, then it's going to come into that, I think. Really? I'm looking at some Michigan law that says we hold that one who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified, that is with malice and that is unjustified in law for the purpose of invading the contractual rights or business relationship of another. Right, and I have that too cited in my brief. So, but if they said we're going to sue you, that doesn't necessarily establish that they would be wrong in doing that or that they were doing it with malice and no justification. Well, one of the things that I think should happen, what should have happened is we don't know the answers to some of these questions because there's so limited evidence, but we do know that we have this letter that he wrote. We know that he wrote that letter. It's been documented, and to sit down and not even consider that letter for what it's saying and get the additional information, I think there's an issue of fact here. I do. I think that we have to sit down and go forward and find out what you're asking. My question was, even if you've got that letter in the record, you don't make your case. Well, the judge seemed to think that and what he said in his opinion seemed to indicate that maybe that letter had some bearing on it because he said without that letter you can't make your case. So he said that in his opinion. Without the letter there's no proof of any contact at all between the two companies. That's right. Without the letter, if he throws that letter and says it's hearsay, that means that there was nothing that happened. If he uses the letter, then now he's got to sit down and explain whether or not what the letter meant, whether it's vague like Judge Moore said, whether or not there's anything else about the letter. And that's the bearing of leaving that letter in. And perhaps he's going to have to sit down and say, you know what, there's an issue of fact. Maybe somebody to try your facts has got to settle some of these issues that we all raised on this. I see my time has expired, Your Honors. Thank you. May it please the Court. I'm Amelia Workman-Farago, Counsel for Defendant Appali Phillips Electronics North America Corporation. Maybe there's an issue of fact is not a basis or a proper opposition to a motion for summary judgment. In order to properly oppose the motion for summary judgment, it was Mr. Bond's burden to point out specific facts in the summary judgment record that demonstrated that there was a genuine dispute as to a material fact in this case. When Mr. Meier began here, he said that the prime issue in the case was causation. I agree causation is an issue in this case. However, the District Court judge decided this case on multiple proper grounds. But it is undisputed that the record shows that there was no genuine dispute, that the reason that Mr. Bond's was terminated from Barrington was because Mr. Bond's was simultaneously working for two companies as a field service engineer at the same time, and those companies were competitive. And this is clear in the declarations of Mr. Mercer and Mr. Jovic of Barrington. It's further clear and undisputed in this record that there was no threat of litigation by Phillips and that Mr. Bond's was not fired by Barrington because of any threat. In fact, Phillips didn't request that Mr. Bond's be terminated from his position. Well, isn't there ambiguity in this letter from Mercer saying, I hope you understand that the threat of a lawsuit that Phillips may place upon us is too costly if we were to keep you? That it could be interpreted that it's just talking about the eventuality that maybe Phillips down the road might sue, or it could be talking about an actual threat that Phillips had made that it would sue. And why shouldn't that letter be then interpreted in favor of the opponent of summary judgment, Bond's, and let the case go forward? Addressing the purported August 25, 2009 Mercer letter, Mr. Mercer and Mr. Jovic's declaration address the subject matter that Mr. Meyer is here asserting the letter should be taken for. And the way that he's asserting it, he's asserting that the letter says that Phillips threatened a lawsuit. In the context of the letter, that would be hearsay. If he's saying that's what the letter says and he is offering it for the truth of that matter. The subject matter of whether or not a lawsuit was actually threatened is addressed in both the declarations, which were made under a penalty of perjury and are properly summed up. Normally we say that you can't have a subsequent affidavit that challenges or conflicts with something that's in your deposition. So if we were to allow the Mercer letter in, the Mercer letter of August 25, 2009, the declaration is in 2013, so the declaration would be a subsequent affidavit. And really a declaration is an affidavit, right? So we really get down to the question, is there any exception to the hearsay rule or provision in the grand scheme of things for summary judgment that would allow us to consider the Mercer letter of August 25, 2009? I don't believe there is, Your Honor, and Mr. Meyer hasn't argued that there is. What he's argued is that Mr. Mercer may appear at trial and testify in a manner that's contrary to his declaration that stated that Mr. Bonds was not fired because of any threat by Phillips and that there was no threat by Phillips. He hasn't pointed out any exception to the hearsay rule and, in fact, there is not one. He's merely making conjecture that if Mr. Mercer appeared at trial, he would testify contrary to his declaration. And that is not sufficient to oppose summary judgment. Even the Jones case, I believe, supports this proposition. We've also cited other cases, Your Honor, where it's clear that if someone made a previous statement but in their affidavit declaration, in this case, made statements to the contrary or demonstrated that that wasn't true or the case, that then that prior hearsay statement would not be admissible at trial. And so I think that is the circumstance we have here. But we need to take it back to whether this letter matters at all in the grand scheme of things because the burden on summary judgment here, this is an intentional tort case. In an intentional tort case of tortious interference, what has to happen is that he has to prove or point to some evidence in the record that Phillips intentionally and maliciously and unjustifiably interfered with his employment. And in order to do that, you have to point to specific affirmative acts by Phillips that corroborate Phillips' motive to intentionally interfere. And as Judge Daughtry was pointing out, well, what if he perceived there was a threat because of the simultaneous employment, even though a threat weren't made? That's not enough. Mercer or Barrington's subjective impression isn't enough. What matters is, are there specific affirmative acts that corroborate that Phillips maliciously intended to interfere with his employment in this record? And there are none. What we have in this record is only evidence of a legitimate business purpose for sending this record. Phillips sent this letter raising a concern over the potential disclosure of its confidential information. It did so in a context where it had just learned that Mr. Bonds, its full-time employee as a field service engineer, was secretly, to Phillips, maintaining a full-time service engineer position for a competing company, Barrington, and that that relationship, the two full-time jobs, had overlapped by some six months. It's undisputed in this record that Mr. Bonds had access to Phillips' confidential information throughout his employment with Phillips, and that included its proprietary, sensitive, and trade secret information, and that he had access to that information during the six-month overlap. Phillips' letter sought two things. It sought to know whether or not Mr. Bonds had provided any confidential information, and if he had, that it would be returned. And, again, as Judge Daughtry pointed out, two disks were returned to Phillips in response to that letter by Barrington. Those disks did contain the confidential information. Your opponent was arguing here that those disks were not there at Barrington because of his client. He's made that statement. Mr. Bonds does deny that he provided the information. However, there is no, regarding the other employees and the other information that Mr. Meyer raised, I do not believe that is in the record. But the fact that the disks were returned are not really the focus. The facts are, the focus of the facts should be, did Phillips have a legitimate business reason at the time it sent the letter, and it absolutely did because it was in a position where it had confidential information. There is protection in law for protecting legitimate use, or protecting your legitimate confidential information from anti-competitive uses. And so that has been recognized, and that's all that Phillips was doing here. And this court has recognized, the Sixth Circuit has recognized, that where a defendant's actions were motivated by legitimate business purposes, that those actions would not constitute improper motive of interference. Suppose there were dual motives on the part of Phillips. Would that be enough to allow the case to go forward? Your Honor, what would have to be demonstrated is that there is evidence in this record to corroborate an affirmative act that Phillips took that corroborates that its intent was to maliciously interfere with the employment. And there are no acts in this case. Were depositions taken of the Phillips key people? No. Declarations. On summary judgment, only declarations were submitted, Your Honor. But they were sworn declarations. The declarations of the Phillips key people who were involved also state that no threat was made. Did the plaintiff seek to take depositions of the Phillips people? He did not.  And on the other issue of depositions, depositions were sought. At one point, Mr. Meyer did raise the possibility of taking depositions of the Barrington witnesses. However, no, he never issued notices. We did issue notices for trial depositions, but there was no significant effort made to take the depositions of Mercer or any of the Barrington witnesses on plaintiff's part. This case was clearly decided correctly on the summary judgment record below because the evidence was undisputed that Phillips did not cause this termination. It was further undisputed that Phillips had a legitimate business purpose in sending this letter and also that there was absolutely nothing in the record to indicate that there was any act of malice on Phillips' part that would suggest that Phillips' intent was to interfere with this business relationship. Just turning really quickly again to the letter and what Mr. Meyer is asserting regarding the Jones test. The court below did not fail to properly consider the effect of the letter. It noted Sixth Circuit law that the question is whether it can be reduced to admissible form. I've already addressed that it cannot be. But the other issue is that the letter, even if it would come in or were to come in at trial, it wouldn't be sufficient because if you review the letter on its face, first of all, it doesn't state a threat. And I think the court has seen that there is an issue with that interpretation that Mr. Bonds is making.  There is law that we've cited in our briefs that threatening to file a lawsuit isn't grounds for a tortious interference claim. It's not unlawful to threaten to enforce a legal right that you have. It's not unlawful under Michigan law. There's nothing illegal, unethical, or fraudulent about threatening a lawsuit, even groundless or not. That's some language from the Michigan court in the Dally case. But further, the protection for threatening a lawsuit in the tortious interference context has also been recognized as being protected by the Norr-Pennington Doctrine. It's not actionable unless it's a sham. And there's absolutely no reason to believe under these circumstances or it would be irrational to find that Phillips' position was objectively meritless. What would be the asserted basis for a lawsuit by Phillips against Barrington? That if there, in fact, were a misappropriation of information, it would be an anti-competitive use of trade secrets and confidential information. That would be a theft of trade secrets claim under MUTSA. So I think that the issue here is that even if there had been a threat, threatening a lawsuit, threatening to take a legal action that you have a right to do, is not grounds for tortious interference. But again, going back to this record, there is no threat of a lawsuit in this case. And that's clear from the declarations. Unless the court has any questions, I think I'm finished. Thank you. We would respectfully request that the trial court's ruling be upheld and that the judgment be affirmed. Thank you. Judge Moore asked opposing counsel whether there were some exceptions to the hearsay rule. Number one, we know that the document that was written, the one that has the text on, that was written by Mike Mercer, was an official business record, had their letterhead on. It was written as a business record. Secondly, we have a party admission made by Mr. Mercer. If he's the vice president and he's that high up in the company and he's making this statement, he's obviously making an admission concerning that. Did you raise those to the district court and did the district court reject those arguments? The actual, and I don't know if you saw this on this, but the hearsay argument wasn't made in the brief. There was no hearsay argument. It was a footnote that the court granted or something ruled on. He said something, the judge said something about, defense counsel argued about hearsaying a footnote. Wait a minute, I thought you told us that the district court wouldn't let the letter in as evidence of its content because it was hearsay? That's what the court said in its ruling. Okay. The court issued a written ruling. There was no oral argument for the motion. The court just issued a written ruling and based on that indicated, and I cited it in my brief, the page number where the court wrote what it wrote. Yeah, so the district court says that the defendant raised the hearsay argument in a footnote. Right. In the district court. So you're saying in response to my question, did you raise these exceptions to the hearsay rule, you're saying you basically didn't raise them in the district court because you didn't perceive this footnote in the defendant's brief to be a major argument. Be an argument. And also the court asked us each to write briefs, took those both under advisement and issued a written opinion later on. That's how the court ruled on this. So it wasn't an issue where I saw the brief and then wrote a response or something, a reply. Also I wanted to make an indication. I think I saw this in the record too. There was several applications and letters of applications that the plaintiff had with Barrington and Michael Mercer. And those letters clearly indicate that he was not going to do anything that was contrary to any material with Phillips with their intellectual property. He didn't want to work on the material. He didn't want to work on the machines. He didn't want to work on anything, any clients, anything. And he had that put specifically into his offer letter that he ultimately signed in this case. Thank you, Your Honor. Thank you both for your argument. The case will be submitted. Would the clerk call the next case, please?